## GRANT v. LAWRENCE.

No. 2119. Decided April 29, 1910 (108 Pac. 931).

1. PROCESS—SUBSTITUTED SERVICE—EFFECT—"PERSONAL SERVICE." Substituted service of summons if properly made by leaving copy at defendant's usual place of abode with some suitable person of at least fourteen years of age, as authorized by Comp. Laws 1907, sec. 2948, subd. 8, constitutes personal service. (Page 454.)

2. EVIDENCE—PRESUMPTIONS—PLACE OF ABODE. The presumption that a man's place of abode is prima facie where his family lives is one of fact, and not of law, and may be overcome by evidence to the contrary. (Page 454.)

3. PROCESS—SUBSTITUTED SERVICE—"PLACE OF ABODE"—"DOMICILE."
Plaintiff in May, 1884, was married to A., and, while she was still
his wife, during the same month he married E., she being his plural
wife.  Thereafter he went to England as a missionary, and took
with him his wife E. and her children, and resided and worked
there.  During his absence in England, his wife A. built a house
in Salt Lake City with money furnished by plaintiff, and during
plaintiff's absence lived therein. · Plaintiff never saw the house nor
lived in it until after his return from England, during which time
summons was attempted to be served on him in an action brought
by defendant by leaving a copy at such house with his wife A., on
which judgment was rendered against him by default, concerning
which he had no knowledge until he returned from England.  *Held*,
that such house was not plaintiff's "usual place of abode" within
Comp. Laws 1907, sec. 2948, subd. 8, authorizing substituted cer-
vice by leaving a copy of the process at the defendant's usual place
of abode with a suitable person at least fourteen years of age; the
term "place of abode" as so used being the place where defendant
lives or abides, his "then present residence," and is not synony-
mous with "domicile."  (Page 456.)

Appeal from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by Heber J. Grant against Franklin Lawrence.

Judgment for plaintiff.    Defendant appeals.

AFFIRMED.

*C. S. Patterson* for appellant.

*Young & Snow* for respondent.

FRICK, J.
Respondent instituted this action in equity to set aside a judgment rendered against him in a former action. The present action is based on the alleged ground that the court in the former action had no jurisdiction of the person of respondent for the reason that summons was not served upon him in that action as required by the statutes of this state. The former action was also an action in equity to quiet the title to certain real estate of which respondent claims to be the owner, or in which he has an interest.

The undisputed facts which are deemed material, in substance, are: That with the exception of two years as a resident of Tooele County, this state, and two years while on a mission in Japan, and three further years while on a mission in England (seven years in all), the respondent has been a resident of Salt Lake City, in Salt Lake County, Utah, all his life. That at the time of trial and for many years prior thereto he was engaged in the insurance business in Salt Lake City, and that there was no interruption in the conduct of said business while respondent was absent in Japan and England as aforesaid. That respondent in May, 1884, married one Augusta W. Grant, and thereafter, and while said Augusta was still living and continued to be his wife, he also married one Emily W. Grant, the latter becoming his plural wife. That, when respondent went to England, he took with him said Emily W. Grant and her six children, and she and respondent established housekeeping in the city of Liverpool, and lived together with said children as a family. That Augusta W. Grant remained in Salt Lake City, and after respondent had departed from this state, and while he was sojourning in England for the purpose aforesaid, said Augusta W. Grant erected a dwelling house at No. 174 East South Temple street, in Salt Lake City. That said house was paid for by money furnished by respondent. That said Augusta and her child during respondent's absence in England moved into said house and lived therein, but respondent had never seen the same nor lived therein when the summons hereinafter referred to was served, but, when he should be released from his services as a missionary in England, he intended to, and when he returned did, go to and live with said Augusta W. Grant in said house. That on the 25th day of April, 1906, and while respondent was absent from Utah and in England as before stated, a certain action was commenced in the district court of Salt Lake County by one Franklin Lawrence to quiet the title to certain real estate in Salt Lake County, in which a judgment or decree was entered quieting the title to said real estate in said Lawrence. That respondent was

made defendant in said action, and the only service of summons that was made in him was made by one Brunner, who was not a party to said action nor an officer authorized to serve process, and, as his return made under oath shows, service was made on respondent as follows: "I further depose and say that the within summons came into my hands for service on the 25th day of April, A. D. 1906, and that on the same day I served the same as follows: On the defendant Heber J. Grant by leaving a true copy thereof at the usual place of abode of the said defendant at Salt Lake City, Utah, with Mrs. Heber J. Grant, wife of the said defendant, she being a suitable person and more than fourteen years of age." That said summons was served as aforesaid on said Augusta W. Grant at the house aforesaid, to-wit, No. 174 East South Temple street. It is also conceded that respondent had no knowledge of the entry of the judgment aforesaid until more than a year after it was entered, that the present action was commenced within a reasonable time after he had obtained knowledge of said judgment, and that said respondent, "had a probable defense to said action" to quiet title as aforesaid. Upon the foregoing facts the district court made conclusions of law, by which it was, in substance, found that the service of summons as set forth in the foregoing statement was not a legal service, and that, therefore, the district court in the action to quiet title did not acquire jurisdiction of the person of respondent. Upon these conclusions the court entered judgment setting aside the former judgment quieting the title in so far as it affected the respondent. The appeal is upon the judgment roll.

While various errors are assigned, the only ones that it is necessary to consider are that the court erred in its conclusions of law, and in entering judgment vacating the former judgment and decree. The only question is: Did the court acquire jurisdiction of the person of respondent in the action to quiet title by the service of summons made on him in the manner set forth in the statement of facts?

The service was what is usually designated as substituted service. That is, it is a substitute for service on the

defendant by delivering to him personally a copy of
the summons. Such service, when properly made, in
legal effect constitutes personal service under our statutes.
Such a service may be made in all actions, and is not, as in
some states, upon the condition that the defendant cannot
be found. Section 2948, Comp. Laws 1907, provides on
whom service of summons shall be made. The introductory
part of the section provides: "The summons must be served
by delivering a copy thereof as follows." This statement is
followed by various subdivisions in which it is prescribed on
whom the summons shall be served when the action is not
against an individual or natural person. When the action
is against a natural person, the service of summons must be
made on said person as provided in subdivision 8 of said sec-
tion, which must be made by delivering a copy "to the de-
fendant personally, or by leaving such copy at his usual place
of abode with some suitable person of at least the age of four-
teen year." From the foregoing statement of facts, it is appar-
ent that service was attempted to be made on respondent at
his "usual place of abode." Respondent contends, and the
court found, that No. 174 East South Temple street, where
Augusta W. Grant, the wife of respondent, and her child,
lived when the service of summons was made in the former ac-
tion, was not his usual place of abode within the purview
of our statute, but that at said time his usual place of abode
was in Liverpool, England, where he lived with Emily W.
Grant and the children as aforesaid. The question of what
constitutes or what is intended by the phrase "usual place
of abode" is not always free from doubt; and the courts
have arrived at different conclusions, depending somewhat
however, on the nature of the proceeding and the subject-
matter which gave rise to the decisions. It may be
accepted that as a general rule a man's place of abode,
*prima facie* at least, is presumed to be where his fam-
ily lives. (10 A. and E. Ency. L. [2 Ed.] 23; *Missouri K.
& T. Trust Co. v. Norris,* 61 Minn. 25, 63 N. W. 634.)
"This presumption, however, is one of fact and not of law,
and may be overcome by evidence showing the fact to be

otherwise." (10 A. and E. Ency. L. [2 Ed.] 24; *Schla-wig v. De Peyster*, 83 Iowa, 323, 49 N. W. 843, 13 L. R. A. 785, 32 Am. St. Rep. 308; *Wolf v. Shenandoah Nat. Bank*, 84 Iowa, 138, 50 N. W. 561.) Usual place of abode is sometimes referred to as being synonymous with domicile or permanent residence. In our judgment there is a broad distinction between domicile and usual place of abode as the latter term is used in our statute. Such also seems to be the conclusion reached by the authorities, as is demonstrated by the following cases: *In Mygatt v. Coe*, 63 N. J. Law, 512, 44 Atl. 199, the Supreme Court of New Jersey, in construing a statute authorzing substituted service in terms similar to ours, says:

"The statute does not direct service to be made at the 'residence' of the defendant, but at his dwelling house or usual place of abode, which is a much more restricted term. As was said in *Stout v. Leonard*, 37 N. J. Law, 492, many persons have several residences which they permanently maintain, occupying one at one period of the year and another at another period. Where such conditions exist, a summons must be served at the dwelling house in which the defendant is living at the time when the service is made."

That is, where a person abides—lives—at the particular time when the summons is served, constitutes his usual place of abode. A similar question was before the Supreme Court of the United States in *Earle v. McVeigh*, 91 U. S., where, at page 508 (23 L. Ed. 398), it is held that, where service of summons is required to be made at the "usual place of abode," such service, in order to constitute legal service, must be made at the defendant's "then present residence." In other words, at the place where the defendant then lives or abides. The same conclusion was reached by the Supreme Court of Missouri in the case of *Bank v. Suman*, 79 Mo. 527, where the case of *Earle v. McVeigh, supra,* is reviewed and approved.

It will be observed that in the case at bar there is no finding that the respondent, before going to England, had his usual place of abode either with Augusta W. or with Emily W. Grant. All that appellant relies on is the fact found by

the court, namely, that respondent "was married to Augusta W. Grant in May, 1884, and afterward, in the same month, while Augusta W. Grant was still his wife, was married to Emily W. Grant." From this finding appellant contends the presumption arises that respondent lived with Augusta W., because she, as he contends, was his legal wife. We have already pointed out that the presumption that a man lives with his family is merely one of fact, and is thus a rebuttable presumption. In view, therefore, of the further finding that in the same month in which respondent married Augusta W. he also married Emily W. and in the absence of any finding with respect to where Augusta W. lived at the time of her marriage, or that she ever lived in the state of Utah, how can the presumption be indulged that respondent had in fact his "usual place of abode" with Augusta W. at any time before he went to England? The utter failure of such a presumption becomes still more apparent when we remember the conceded fact that the summons in the former action was in fact served at a place where the respondent had never made his usual place of abode. The house, as a place of abode, had no existence when respondent departed from the state, and, if it were conceded that he at some time in the future intended to make it his place of abode, yet it manifestly was not such at the time the summons was served. If the court had found that at the time respondent went to England he was married to Augusta W., that she at the time was his wife, and that he actually lived with her in Salt Lake City up to the time of his departure, it might be inferred that his home continued to be at such place as she made her home in said city. Under all the facts as found, and in the absence of other findings to which we have referred, it seems to us that no presumption can be indulged in this case that at the time the summons was served in the former action respondent had his usual place of abode at No. 174 East South Temple Street in Salt Lake City. In order to so hold, the conclusion would have to be based upon a fiction which in our judgment is entirely overcome by all the facts found in the case.

Counsel for appellant has referred us to a number of cases in which, as he contends, the courts have arrived at a conclusion different from that arrived at by us. We do not deem it either necessary or profitable to review those cases at length, for the reason that all of them, except the case of *Missouri K. & T. Trust Co. v. Norris, supra,* and to which we have referred, pass upon the question of residence or usual place of abode in the light of local statutes and in connection with the pleas of the statute of limitations, or of the exercise of the franchise by a citizen, or where a claim of homestead was invoked, or where the question arose of what constituted the usual place of abode or residence of persons who were sentenced to be imprisoned at a place or county other than where they lived at the time sentence was imposed. Those cases, therefore, have but little, if any, influence upon this case, in view of the undisputed facts.

Under all the facts and circumstances of this case, we are constrained to hold that the district court committed no error either in the conclusions of law or in setting aside the judgment entered against the respondent in the former action. The judgment is therefore affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.